UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTINA DEWS,

*Plaintiff*,

v.

HOWARD UNIVERSITY HOSPITAL,

*Defendant.*

No. 24-cv-01490 (DLF)

**MEMORANDUM OPINION AND ORDER**

Christina Dews brings this action against Howard University Hospital (HUH), under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e *et seq.*, and the D.C. Human Rights Act (DCHRA), D.C. Code §§ 2-1402.11 *et seq*. Am. Compl., Dkt. 18. Before the Court is HUH's Motion to Dismiss. Def.'s Mot., Dkt. 19. For the reasons that follow, the Court will grant in part and deny in part the motion.

**I.   BACKGROUND**[1]

Dews is a female who was employed as a Unit Clerk in HUH's Surgical Intensive Care Unit beginning in February 2022. Am. Compl. ¶¶ 6, 12. Dews alleges that she "was subjected to ongoing and continuous sexual harassment based on her gender," *id.* ¶ 15, by her coworker Kelly Lena, management, and HUH employee Eric Kelley, *id.* ¶¶ 37, 40.

According to Dews, Lena engaged in a "pattern of harassment," *id.* ¶ 17, by "yell[ing] and express[ing] open hostility towards [Dews]," *id.* ¶ 24, "enlist[ing] other employees to . . . creat[e]

---

[1] For purposes of this motion to dismiss, the Court accepts as true all material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court does not consider matters outside the pleadings, Fed. R. Civ. P. 12(d), including the exhibits attached to HUH's motion to dismiss, *see* Dkts. 19-3, 19-4.

a hostile work environment for [her]," *id.* ¶ 28, and "calling [her] names such as, 'snitch' because of her complaints, or 'Cinderella' mocking [her] gender and cleanliness," *id.* ¶ 29. Dews "repeatedly reported" Lena's actions to her manager, who advised Dews to "escalate her complaints to the Human Resources department." *Id.* ¶¶ 18–20. When Dews did so, the Director of Nursing Sandra Mavin warned her that "continued complaints could lead to termination," *id.* ¶ 23, "dismissed [Dews's] concerns," *id.* ¶ 26, and "told her never to return with similar complaints," *id.* At some point during Dews's employment, "management" also commented that "her buttocks [were] 'too big' to wear scrubs." *Id.* ¶ 40.

Dews further alleges that Kelley sexually assaulted her on two occasions. In March 2022, Kelley "aggressively grab[bed] her waist and buttocks." *Id.* ¶ 32. Dews did not report this incident to Human Resources. *Id.* ¶ 38. Rather, she "repeatedly visited [HUH's] employee nurse facilities" and requested a transfer to a specific department. *Id.* ¶¶ 42–44. HUH instead transferred Dews to a different unit where she "work[ed] on different floors daily," *id.* ¶ 44, "was assigned less desirable shifts and tasks," *id.*, and faced "increased workload, lack of stable assignment, and being floated to different units," *id.* ¶ 45. In September 2022, Kelley again "grabbed [Dews's] buttocks," *id.* ¶ 50, "sang inappropriate songs," *id.* ¶ 47, "became aggressive," *id.*, and stated that Dews "act[ed] like a little as* girl," *id.* ¶ 49. Dews reported this September incident to Human Resources. *Id.* ¶¶ 52–53. Despite a promise that another representative would call her the next day, Dews did not receive any further communications about the incident. *Id.* ¶¶ 55–56, 58–59.

Dews began medical leave on September 21, 2022. *Id.* ¶ 57. To support her leave, she sent HUH her medical notes, *id.* ¶ 61, the last of which stated that she was "not cleared to return" because of "the trauma and unsafe environment she experienced," *id.* ¶ 66. When Dews's approved leave ended on December 8, HUH notified her that her employment also ended due to

"separation of employment." *Id.* ¶ 68. Dews alleges she was "constructive[ly] terminat[ed]," as she was not medically cleared to "return to an environment where her safety was not guaranteed." *Id.* ¶ 69.

In April 2024, Dews filed this action *pro se*. *See* Dkts. 1-1, 1-2. She subsequently obtained counsel and filed an amended complaint alleging gender discrimination, hostile work environment, and retaliation under Title VII and the DCHRA. HUH now moves to dismiss the amended complaint for failure to state a claim.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *Ashcroft*, 556 U.S. at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified). But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in

the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. ANALYSIS

### A. Sexual Harassment and Assault

In Counts I and III, Dews asserts Title VII and DCHRA claims on the grounds that HUH engaged in "sexual harassment and sexual assault" against her because of her gender. Am. Compl. ¶¶ 9–10. To state a claim based on sexual harassment or assault, a plaintiff must allege that the harassment or assault explicitly or constructively altered the terms or conditions of her employment. *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999). Explicit alteration requires a showing that a "tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998). In such cases, a plaintiff may state a *quid pro qu*o sexual harassment claim. In contrast, constructive alteration, which requires a showing of "severe or pervasive conduct," gives rise to a hostile work environment claim. *Id.* The distinction, in other words, is that *quid pro quo* harassment involves "threats [that] are carried out," while hostile-work-environment harassment involves "offensive conduct in general." *Burlington Indus.*, 524 U.S. at 751.

Here, Dews does not allege receiving any sexual demands which might support a *quid pro quo* harassment claim, nor does she allege that her harassers had any supervisory authority over her. Thus, Counts I and III are based on severe and offensive conduct and are therefore properly categorized as hostile work environment claims, which Dews does not dispute. *See Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 247 (D.D.C. 2018); *see generally* Pl.'s Opp'n, Dkt. 20. The Court will thus dismiss Counts I and III as duplicative of Counts II and IV.

B. **Discriminatory Hostile Work Environment**

To state a hostile work environment claim under Title VII and the DCHRA, a plaintiff must allege facts to support that:

(1) [s]he is a member of a protected class; (2) [s]he was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.

*Holston v. Yellen*, 630 F. Supp. 3d 47, 59 (D.D.C. 2022) (citation modified); *see Lyles v. District of Columbia*, 17 F. Supp. 3d 59, 67 (D.C. Cir. 2014); *Purcell v. Thomas*, 928 A.2d 699, 710 (D.C. 2007) (citation modified). As to the fourth element, the plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citation modified). In its analysis, a court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (citation modified).

Dews has not alleged sufficiently severe or pervasive discriminatory conduct to establish a hostile working environment. Dews asserts that Lena yelled at her, mocked her, and called her names like "snitch" and "Cinderella." Am. Compl. ¶¶ 21, 29, 41. But "petty insults, vindictive behavior, and angry recriminations" are "ordinary tribulations of the workplace" that do not support a hostile work environment claim. *Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014) (citation modified); *see Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015) ("[A] long list of trivial incidents," including name-calling, rude emails, and lost tempers, "is no more a

hostile work environment than a pile of feathers is a crushing weight."). And management's remark that Dews's "buttocks [were] 'too big,'" Am. Compl. ¶ 40, is an "offhand comment[]" and "isolated incident[]" which Dews has not shown to affect her employment, *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Martinez v. Constellis/Triple Canopy*, No. 20-cv-0153 (RC), 2021 WL 1226747, at *3 (D.D.C. Apr. 1, 2021), *aff'd*, No. 21-cv-7046, 2022 WL 2281897 (D.C. Cir. June 24, 2022) (finding comments about the length and shape of the plaintiff's beard were "ordinary tribulations of the workplace").

Dews separately claims that Kelley "grabbed her buttocks" twice over a six-month period. Am. Compl. ¶¶ 32, 50. During the second incident, Kelley also sang inappropriate songs, *id.* ¶ 47, and called her a "little as* girl," *id.* ¶ 49. While frequent "pat[ting] on [a plaintiff's] buttocks" or "escalating" sexual advances could suggest severe or pervasive conduct, *Lyles*, 17 F. Supp. 3d at 67–68, isolated instances of unwanted touching with comments like Kelley's do not "meet the demanding legal standard for a hostile work environment," *id.* (citation modified); *see Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007) ("[F]ive discrete acts over the two-year period," including touching plaintiff's buttocks and attempting to kiss plaintiff, along with "infrequent inappropriate comments" were not "sufficiently severe or pervasive."); *Carter v. Greenspan*, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) ("[T]hree isolated incidents" of caressing plaintiff's knee, touching plaintiff's buttocks, and placing breasts on plaintiff's arm, "are not sufficiently severe in quantity or quality."). Because Dews has not plausibly alleged severe or pervasive conduct, the Court will dismiss her hostile work environment claims under Counts II and IV.

### C. Retaliation

Next, the Court turns to the retaliation claims under Counts II and IV. To state a retaliation claim under Title VII or the DCHRA, the plaintiff must allege that "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) the two are causally connected." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (citation modified); *Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012).

#### 1. Protected Activity

As to the first element, raising informal complaints to supervisors constitutes protected employment activity. *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Dews sufficiently alleges engaging in protected activity when she reported a discriminatory hostile work environment to her manager and to Human Resources on multiple occasions. First, Dews alleges that she complained repeatedly about Lena's conduct, but she provides no dates about these incidents. Am. Compl. ¶ 18. Second, around March of 2022, she reported Kelly's physical assault. *Id.* ¶ 31, 34. And third, around September of 2022, she reported Kelly's grabbing her buttocks. *Id.* ¶¶ 18, 21, 52.

#### 2. Adverse Employment Action

Dews alleges three potential adverse employment actions—a hostile work environment, a transfer, and termination. Only her termination supports a cognizable retaliation claim. A retaliatory adverse employment action must be so objectively harmful to an employee's "working conditions or future employment prospects," *Forkkio v. Powell*, 306 F.3d 1127, 1132 (D.C. Cir. 2002), that it would "dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

*First,* retaliatory and substantive hostile work environment claims are governed by the same standards. *Xie v. Chao*, No. 21-cv-1289 (DLF), 2022 WL 3585669, at *7 (D.D.C. Aug. 22, 2022) (collecting cases). Because Dews has not plausibly alleged a substantive hostile work environment, *see supra*, her retaliatory hostile work environment claim likewise fails.

*Second,* a transfer with "significantly different responsibilities or . . . benefits" generally demonstrates an adverse action by showing "objective harm," *Forkkio*, 306 F.3d at 1131, unlike a transfer with subjective injuries of dissatisfaction, public humiliation, or loss of reputation, *Booth v. District of Columbia*, 701 F. Supp. 2d 73, 80 (D.D.C. 2010). Changes in responsibilities may alter the "terms, conditions, or privileges of employment," *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002), if such changes deter engagement in protected activity, *Payne v. Salazar*, 899 F. Supp. 2d 42, 56–57 (D.D.C. 2012); materially reduce supervisory responsibilities, *Ohal v. Bd. of Trs. of Univ. of D.C.*, 100 Fed. App'x 833, 834 (D.C. Cir. 2004) (per curiam); or severely increase workload, *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010).

Dews has not alleged a materially adverse transfer. She does not claim that her transfer changed her pay or benefits, *see Forkkio*, 306 F.3d at 1131, or that her increased workload was severe, *see Mogenhan*, 613 F.3d at 1166 (finding an increase of workload to "five to six times that of other employees" materially adverse). And Dews's allegations of receiving "less desirable shifts and tasks" and "being floated to different floors," Am. Compl. ¶ 44, indicate subjective dissatisfaction instead of significant change, *compare Burlington Northern*, 548 U.S. at 70 ("Almost every job . . . involves some responsibilities and duties that are less desirable than others."), *with Czekalski v. Peters*, 475 F.3d 360, 364–65 (D.C. Cir. 2007) (finding supervisory reassignment from 960 employees, fifty programs, and a large budget to under ten employees, one

8

program, and little budget suggests significantly different responsibilities). Thus, Dews fails to plead a transfer that objectively harmed her employment.

*Third,* "firing" is a materially adverse action that "involves a significant change in employment status." *See Hornsby v. Watt*, 217 F. Supp. 3d 58, 65 (D.D.C. 2016) (quoting *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)). Dews has plausibly alleged a materially adverse action through her termination.

### 3. Causal Connection

A plaintiff must allege facts sufficient to infer a "causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). "In the absence of direct evidence," a plaintiff may show "that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013) (citation modified). A court looks to the "specific facts of each case to determine whether inferring causation is appropriate." *Hamilton*, 666 F.3d at 1357–58. Where "mere temporal proximity is the only evidence of causality, the Court has held that the temporal proximity must be very close." *Spence*, 109 F.4th at 540 (citation modified) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). An adverse action occurring "occurring within three to four months of the protected activity" may be "sufficient to allow an inference of causation." *Id.*

Here, Dews presents no direct evidence of causation, so the Court must rely on an inference drawn from temporal proximity. As explained, Dews only alleges one cognizable adverse employment action—her termination on December 9, 2022. Am. Compl. *Id.* ¶ 68. That event occurred roughly two and a half months after she last engaged in protected activity by reporting her interaction with Kelley to Human Resourecs in mid-September. *Id.* ¶¶ 52–55. That temporal

9

gap just barely clears the bar. *See Spence*, 109 F.4th at 540 (explaining that causation may be inferred from a two- to three-month gap). *But see Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting an interval of two and a half months at the summary judgment stage).

HUH proffers an alternative, non-retaliatory justification for the termination: it argues that Dews was terminated because "her leave was exhausted and she didn't return to work." Def,'s Mot at 17. To support that justification, the defendant presents two exhibits of correspondence between HUH and Dews. *See* Dkts. 19-3, 19-4. In resolving a motion to dismiss, however, the Court may not consider evidence outside the pleadings, and it declines to treat the defendant's motion as one for summary judgment without an opportunity for Dews to present all pertinent information. *See* Fed. R. Civ. P. 12(d).[2]

Accordingly, the Court concludes that Dews's allegations are narrowly sufficient to establish an inference of causation at the motion to dismiss stage. Dews may proceed on her retaliation claim based on the theory that HUH terminated her in retaliation for her complaints to Human Resources.

---

[2] Should HUH file any motion for summary judgment, to obtain further discovery, Dews would be required identify specific, discoverable facts that could rebut any evidence that HUH proffers to negate causation. *See* Fed. R. Civ. P. 56(d); *see Jeffries v. Barr*, 965 F.3d 843 (D.C. Cir. 2020) (A party opposing summary judgment must "outline the particular facts the party defending against summary judgment intends to discover" and "show that the information is in fact discoverable." (citation modified)).

## CONCLUSION

For the foregoing reasons, it is ordered that the defendant's Motion to Dismiss, Dkt. 19, is **GRANTED IN PART** and **DENIED IN PART**:

1) Counts I and III of the Amended Complaint, Dkt. 18, are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(6).

2) The hostile work environment claims under Counts II and IV, of the Amended Complaint, Dkt. 18, are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(6).

3) Dews may proceed on her retaliation claims under Counts II and IV.

**SO ORDERED**.

August 15, 2025

_____
DABNEY L. FRIEDRICH
United States District Judge